IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v.  ) | CASE NO. 2:08-cv-1025-MEF |
| ) | |
| ALABAMA DEPARTMENT OF ) | |
| MENTAL HEALTH AND MENTAL ) | (WO) |
| RETARDATION, ) | |
| ) | |
| DEFENDANT. ) | |

**MEMORANDUM OPINION AND ORDER**

The United States of America ("the United States") brings suit against the Alabama Department of Mental Health and Mental Retardation ("the Department") for alleged violations of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4333 ("USERRA"). The cause is before the Court on the Defendant's Motion for Summary Judgment (Doc. # 19). For the reasons set forth below, the motion is due to be DENIED.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this action pursuant to 38 U.S.C. § 4323(b). There is no dispute as to the Department being subject to personal jurisdiction. Venue is proper in the Court pursuant to 38 U.S.C. §4323(c)(1) and 28 U.S.C. § 1391(b).

**PROCEDURAL HISTORY**

On December 30, 2008, the United States filed this civil action against the

Department. The United States alleges that the Department violated USERRA by failing to promptly reemploy a longtime Department employee named Roy Hamilton ("Hamilton") after he returned from active military service in Iraq.[1] The United States seeks declaratory relief, injunctive relief which would require the Department to comply with all provisions of USERRA and to compensate Hamilton for lost earnings and benefits. The United States also seeks injunctive relief which would return Hamilton to the seniority, status and compensation he would have attained had he remained continuously employed with the Department until the present including during the time of his active duty service. Finally, the United States seeks to enjoin the Department from future violations of USERRA.

On January 29, 2009, the Department filed its Answer (Doc. # 8). In this Answer, the Department asserted a number of "affirmative defenses." On June 5, 2009, the United States filed its motion for partial summary judgment. By this motion, the United States asserted that as a matter of law the affirmative defenses relating to the Eleventh Amendment, comity, federalism, and various types of abstention are inapplicable to this action. The United States further asserted that the *Mt. Healthy* defense is inapplicable as a matter of law. By separate Memorandum Opinion and Order, the Court has rejected those affirmative defenses as a matter of law. *See* Doc. # 52.

On June 5, 2009, the Department filed a motion seeking dismissal pursuant to Federal

---

[1] The Department repeatedly and mistakenly refers to Hamilton as "Plaintiff." The United States is the only plaintiff in this action.

Rule of Civil Procedure 12(b)(1) and 12(b)(6). Alternatively, the Department sought judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Like the motion from the United States, the Department's motions address the affirmative defenses relating to the Eleventh Amendment, comity, federalism, and various types of abstention. The Court has addressed this Motion by a separate Memorandum Opinion and Order. *See* Doc. # 52.

On June 5, 2009, the Department filed a separate motion for summary judgment predicated on different grounds. The United States has opposed this motion. The Court will address this motion in this opinion.

## APPLICABLE LEGAL STANDARDS

Unlike the other motions from the Department, the motion now before this Court is predicated on Federal Rule of Civil Procedure 56 which tests the sufficiency of a claim or defense on the basis of a submitted evidentiary record as opposed to on the allegations of the pleadings. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). According to the Supreme Court, "a party seeking summary judgment always bears the initial responsibility of informing the district

3

court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The Eleventh Circuit Court of Appeals has held that "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

## FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion for summary judgment. The submissions of the

parties, viewed in the light most favorable to the non-moving party, establish the following facts.

The Department is a state service agency established by the Code of Alabama. It operates under the direction, supervision and control of a Commissioner, who the Governor appoints. Various divisions of the Department address mental illness, mental retardation, substance abuse, and administration. The Division of Mental Retardation provides residential care and treatment through a state operated developmental center and a system of regional community services and supports through contracts with various community providers. The Department is a large employer that employs almost 3,000 employees.

On July 13, 1987, the J.S. Tarwater Developmental Center ("Tarwater"), which is a part of the Department's Division of Mental Retardation, hired Hamilton as a custodial worker. Initially, his job responsibilities involved maintaining the grounds at Tarwater. Hamilton worked at Tarwater for sixteen years and five months.

Due to budgetary problems in 1996, the Department offered an opportunity to custodial workers at Tarwater to become Mental Health Workers. Some of the custodial workers accepted and, upon passing the promotional examination, began acting in that position. In 2000, the Department reduced custodial positions further when it contracted out all housekeeping services. Having eliminated these in-house positions, the Department assigned the former housekeeping and custodial staff duties assisting the Mental Health Workers. The Department created a new job classification known as Mental Health Assistant

("MHA"). Hamilton, and other former housekeeping or custodial staff remaining at Tarwater, took and passed the promotional examination for the Mental Health Worker position, but declined the promotion and elected to continue working as MHAs. Thus, in 2002, the Department reclassified Hamilton from a housekeeping/custodian to an MHA. The Department expressly classified the MHA position as a "permanent" position. As an MHA, Hamilton's job responsibilities included transporting mental health patients to and from different locations and helping patients learn life skills, such as cleaning.

The State of Alabama's financial problems continued. In January of 2003, a new Governor took office. He asked the Cabinet members including the Department's Commissioner to present plans to reduce state spending. The Commissioner began working on plans to consolidate and close several mental health facilities in the state. The population in the Department's centers decreased. The Department closed several centers including Tarwater in January of 2004. In anticipation of these closings, the Departments distributed a letter to employees in August of 2003 indicating when various facilities would close.[2] Each employee in a facility slated for closure was asked to complete, sign, and return a survey indicating their desires for alternative employment to the personnel office. Hamilton indicated he was available to relocate to the Central Office in Montgomery or to Greil Psychiatric Hospital in Montgomery. Unfortunately for Hamilton, neither of those two

---

[2] According to Hamilton's testimony, he did not learn for certain that Tarwater would close until December of 2003.

locations had any vacancies for MHAs.

Despite the fact that his military deployment was imminent, the Department offered Hamilton a promotion to a Mental Health Worker position at a facility in the Tuscaloosa, Alabama area. The Department required Hamilton to accept or decline this offer despite the fact that he would be deployed at the actual time his current position at Tarwater ceased to exist because of the center's closing. Consequently, on November 24, 2003, he declined that offer to be transferred to a position at a facility in Tuscaloosa. Hamilton was concerned that if he rejected this transfer, the Department might stop trying to find a position to which he could be relocated if and when Tarwater closed. Officials at the Department repeatedly reassured Hamilton that they would continue to seek jobs elsewhere for him even if he declined the transfer to the Tuscaloosa facility. Indeed, the Department successfully relocated several other Department employees from Tarwater, who like Hamilton declined an initial offer of transfer.

During Hamilton's tenure at Tarwater, he was a member of the United States Army National Guard. He served in the National Guard for twenty-eight years as a Support Specialist Non-Commissioned Officer (E-5) with the Military Police in Prattville, Alabama.

In September of 2003, the National Guard notified Hamilton that he would be going on a long term deployment to Iraq in support of Operation Iraqi Freedom. Pursuant to the Department's policy at that time, Hamilton notified his supervisor, Mike Lackey ("Lackey"), of his impending deployment. Lackey confirms that Hamilton verbally notified him that he

7

would be going on an eighteen month deployment, beginning some time near Christmas, but he is not able to give clear and consistent testimony about the precise date on which he received that notice.

In December of 2003, Hamilton received his actual written military Orders. On the day he received the Orders, Hamilton was working with his National Guard unit to prepare for deployment. He immediately drove to Tarwater and handed a copy of his written Orders to Lackey. Thus by December 22 or 23, Lackey had written notice of Hamilton's deployment. Additionally, on the same day he gave a copy of his written Orders to Lackey, Hamilton also provided a copy of his Orders to Doretta Strength, a Personnel Specialist in Tarwater's personnel department. Hamilton also testified that he gave a copy of his Orders to Robert Wisenbaker, the "big boss" at Tarwater. Hamilton testified that because he was not sure where the Department was going to place him after the closure of Tarwater, he wanted to be sure that he had given copies to his supervisor, the personnel department, and the person in charge so that the Orders would be forwarded to the location where he would be employed upon his return from deployment. When he presented the Orders to these three people, none of them gave any indication that he would not have a position with the Department after his deployment. When Hamilton departed for military leave after working on December 29, 2003, Tarwater was up and running, and no one had given Hamilton any documentation indicating that he was separated or about to separate from his employment with the Department.

Effective on January 1, 2004, the Department interpreted Hamilton's November 23, 2003 rejection of the transfer to the Department facility in the Tuscaloosa area as a voluntary resignation. It did not inform Hamilton of this at the time. Hamilton began his military duty on January 2, 2004. Tarwater closed its doors on January 15, 2004. Hamilton remained on active duty until his honorable discharge on April 11, 2005. During his deployment, he requested on one occasion to draw funds from his retirement account due to financial hardship. When he did so, the Department did not tell him that he was no longer an active employee. In May of 2004, the Department sent Hamilton a letter regarding its continuing efforts to assist employees displaced as a result of the consolidation and closure of facilities with finding alternative placements. Hamilton received this letter when he returned home from active duty in April of 2005 and assumed that it meant the Department may have found a new placement for him now that Tarwater was closed.

In April of 2005, within weeks of Hamilton's release from active military service, Hamilton sought re-employment with the Department. First he went to Greil Hospital, which is where he had heard several of his Tarwater co-workers were working. He explained the situation to the receptionist and asked if he was employed there. She checked and told he that he was not. She suggested he check with the Central Office. Hamilton went to the Central Office that same day and spoke with Joan Owens ("Owens"), herself a former human resources professional at Tarwater. She told him he needed to speak to Henry Ervin ("Ervin"), the Personnel Director for the Department, but that Ervin was in a meeting and

unavailable. Because Ervin was unavailable, Hamilton went to the Alabama State Personnel Department to seek assistance, but was told to speak with the Department's Central Office. Hamilton went back to the Department's Central Office and spoke to Owens again. She again told him Ervin was not available. Hamilton left a message for Ervin.

Hamilton continued over the next weeks to request re-employment. He made telephone calls and made in person visits. Within a couple months, he finally spoke to Ervin.[3] Ervin told him that the Department had lost his personnel file, but that they were looking for it and when it was located they would call Hamilton. Ervin assured Hamilton that once the file was located everything would be alright and they would go from there. Ervin never told Hamilton that he was no longer an employee of the Department; rather, Ervin said that when he found the records, he would take care of Hamilton and get him a job.

When Ervin did not call or follow up with Hamilton, Hamilton went back to the Central Office at least four or five times to follow-up himself. Additionally he made several calls to Ervin. The next time Hamilton saw Ervin, Ervin against told him that his records could not be located. Out of necessity, Hamilton began looking for alternative employment. He eventually accepted a position with Norment Security in August of 2005, four months

---

[3] Ervin denies talking to Hamilton in 2005, however, he admits that it is his belief that Hamilton should have been re-employed in 2005 in a position similar to the one he held at Tarwater before his deployment. Ervin also concedes that Hamilton was eligible for re-employment. Furthermore, in 2005, the Department hired 313 new MHWs and re-employed an additional 65 MHWs who had previously been laid off. It is undisputed that Hamilton was qualified for a MHW position. Owens also confirmed that the Department could have returned Hamilton to work in 2005.

after his initial request for re-employment with the Department.

In 2007, Hamilton again contacted Ervin seeking re-employment. According to Ervin, Hamilton stated that he had been given the run around by the State of Alabama since 2005. The Department re-employed Hamilton in August of 2007. He was re-employed at Greil Hospital in Montgomery, Alabama as a MHA. The Department did not create a newly funded position for him, but moved funding from another position in the nursing department. At the time of Hamilton's re-employment at Greil, at least one of the MHAs working there had been employed with Hamilton at Tarwater.

On February 6, 2008, Hamilton filed a complaint under USERRA with the United States Department of Labor. The United States Department of Labor's Veterans' Employment and Training Service conducted an investigation and found that Hamilton's claim had merit. The Department of Labor was unable to resolve Hamilton's complaint, and his case was referred to the United States Department of Jusitce. On December 30, 2008, the United States filed its Complaint in this action alleging that the Department violated USERRA by failing to promptly re-employ Hamilton upon his return from active military service.

## DISCUSSION

**A.  Statute of Limitations and Laches**

In a shockingly conclusory fashion citing no legal authorities whatsoever, the Department asserts that the United States' claim is barred by the statute of limitations or by

11

the doctrine of laches.[4]  The Court cannot agree.  The sole claims in this action are pursuant to USERRA.  USERRA expressly provides, in a section titled, "Inapplicability of statutes of limitations," that "there shall be no limit on the period for filing the complaint" under USERRA.  38 U.S.C. § 4327(b).  Plainly, no statute of limitations bars the claim in this action.  Moreover, the Court finds that the Department fails to offer either factual or legal support for its assertion that laches is a bar.  The Department would bear the burden of showing inexcusable delay in asserting a right and undue prejudice to it as a result of that delay.  The Department is not entitled to have its motion for summary judgment granted on this basis because it has failed to point to the legal or factual predicate for this affirmative defense.   To the extent that the motion for summary judgment is predicated on statute of limitations or laches, it is due to be DENIED.

**B. Requirements for Reemployment Rights under USERRA**

The Department contends that Hamilton failed to meet the statutory requirements of re-employment rights for persons who serve in the Uniformed Services.  Under USERRA, "any person who is absent from a position of employment by reason of service in the uniformed services shall be entitled to reemployment rights" so long as the following three

---

[4] In addition to baldly asserting these defenses without argument or authority in the brief in support of the motion for summary judgment, the Department wholly failed to respond to the United States' argument on these defenses in the reply brief. Obviously, the Department has no real faith in these arguments. Counsel for the Department is reminded of their obligations under Federal Rule of Civil Procedure 11 and cautioned against practicing in this fashion in this Court.

conditions are met: (1) the employee gives proper notice to his employer when leaving; (2) the absence is for less than five years; and (3) the employee timely applies for reemployment upon his return. *See* 38 U.S.C. § 4312(a)(1)-(3). If an employee meets these requirements, the employer must reemploy the service member in either the position he would have held had his employment not been interrupted by military service, or "a position of like seniority, status, and pay." 38 U.S.C. § 4314(a)(2)(A). In determining whether an employee has met its obligation to reemploy a service member, courts construe broadly USERRA's protections in favor of the returning service member. *See, e.g., Petty Metro. Gov't of Nashville-Davidson County*, 538 F.3d 431, 439 (6th Cir. 2008).

Here it is not disputed the Hamilton's absence lasted less than five years. Instead, the Department claims it is entitled to summary judgment because Hamilton failed to provide advance verbal or written notice of his impending deployment; declined a transfer to another Department facility prior to his departure for military duty which effectively terminated his employment and his reemployment rights, and failed to timely apply for reemployment. Countering this, Hamilton has provided sufficient evidence from which a reasonable jury could find in his favor on each of these three points. At best, there exist genuine issues as to the material facts relating to the timely notice elements of the claim and relating to whether the Department actually properly terminated his employment after what it viewed as his resignation by declining a transfer. Accordingly, the Department's motion for summary judgment must be denied to the extent it is predicated on arguments relating to the elements of the claim under USERRA.

**C. Affirmative Defenses Under USERRA**

The Department contends that it is entitled to summary judgment on all three of USERRA's statutory affirmative defenses to reemployment. When a defendant seeks summary judgment on an affirmative defense, the defendant must not only prove each element of the affirmative defense, but the defendant must also show that no genuine issues exist with respect to any element of the defense. USERRA's three statutory affirmative defenses to the reemployment obligation are: (1) "the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period;" (2) the person has returned with a service-related disability or is otherwise not qualified for his or her pre-service position, and employing such a person in a position for which he is now qualified "would impose an undue hardship on the employer;" and (3) "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A)-(C). USERRA specifically places the burden of proving each of these defenses on the employer. 38 U.S.C. § 4312(d)(2).

With respect to each of these three affirmative defenses, the Department fails to carry its burden. Genuine issues of material fact exist. To extent that certain facts are established, those fact weigh against, and not in favor of, these affirmative defenses. The Department fails to establish its entitlement to judgment as a matter of law with respect to any of these defenses. Summary judgment is due to be DENIED to the extent it is based on these affirmative defenses.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 19) is DENIED.

DONE this the 10th day of February, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE
